OHIO CITIZENS BANK, TRUSTEE, *v.* MILLS, APPELLANT; PUGH ET AL., APPELLEES.

[Cite as Ohio Citizens Bank *v.* Mills (1989), 45 Ohio St. 3d 153.]

(No. 88-1103—Submitted May 17, 1989—Decided August 23, 1989.)

*Watkins & Bates, John M. Carey, John J. McHugh III* and *Gary O. Sommer,* for appellant.

*Brown, Baker, Schlageter & Craig, Carter J. Neff* and *Mark E. Lupe,* for appellees.

HOLMES, J. The issue presented for our consideration is whether R.C. 3107.15(A)(2), which in effect abrogated the common-law "stranger to the adoption" doctrine, may be applied in construing wills or trust documents created prior to the effective date of such statute. We answer such query in the negative, and accordingly reverse the court of appeals.

In determining whether or not an adopted child is included within a class designation in a will or trust instrument, and where a reading of the "four corners" of such instrument does not give a reviewing court the appropriate clues, various additional considerations must be weighed.

First, it is axiomatic that the intent of the testator, grantor, or settlor will be ascertained and given effect wherever legally possible. *Townsend's Executors* v. *Townsend* (1874), 25 Ohio St. 477; *Jones* v. *Lloyd* (1878), 33 Ohio St. 572; *Wills* v. *Union Savings & Trust* (1982), 69 Ohio St. 2d 382, 23 O.O. 3d 350, 433 N.E. 2d 152; *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 1 OBR 178, 438 N.E. 2d 117; *Tootle* v. *Tootle* (1986), 22 Ohio St. 3d 244, 22 OBR 420, 490 N.E. 2d 878. The express language of the instrument generally provides the court with the indicators of the grantor's intentions, *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42, 40 O.O. 2d 55, 227 N.E. 2d 801, and the words used in the instrument are presumed to be used in their ordinary sense. *Albright* v. *Albright* (1927), 116 Ohio St. 668, 157 N.E. 760. In his trust instrument, Charles Breyman provided for the distribution of the trust assets to the "living children of each deceased grandchild." Appellant, Robert David Mills, the natural child of Robert E. Mills, is a living child of a deceased grandchild, and is obviously an intended beneficiary of this trust.

With respect to the adopted children of Robert E. Mills, the difficulty arises, of course, as to whether they are included within this class of "living children," where no such intent is stated. We then must look to the history of this area of the law, both the common law and statutory law, regarding the inheritance rights of adopted children.

Within the common law dealing with inheritance by adopted children, courts generally have treated an adoption by the settlor or grantor differently than adoptions by others. In the former situation, courts have readily concluded that the testator is presumed to have intended to include his child or children by adoption as well as his natural children. *Albright, supra,* at 680, 157 N.E. at 764. In the latter situation, the courts have been less likely to hold that an adopted child is to be included within a class in a testamentary gift or *inter vivos* trust. See, generally, Annotation, Adopted child as within class in testamentary gift (1962), 86 A.L.R. 2d 12; Annotation, Adopted child as within class named in deed or *inter vivos* trust instrument (1962), 86 A.L.R. 2d 115.

Courts have traditionally looked to the specific words or terms utilized to designate the class, such as "heirs," "heirs at law," "child," "children," "issue," and "heirs of the body." The courts have tended to ascribe the common or ordinary meaning to such words, and have held that the terms "child," "children," "grandchildren," "heirs of the body," "issue," or "heirs" appearing in a will, trust or other instrument exclude an adopted child, absent a contrary intention within the instrument itself and the surrounding circumstances. See *Albright, supra; Third Natl. Bank & Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355, 47 O.O. 257, 105 N.E. 2d 573; *Natl. City Bank* v. *Judkins* (1964), 8 Ohio Misc. 119, 37 O.O. 2d 200, 219 N.E. 2d 456; *Central Trust Co.* v. *Bovey* (1971), 25 Ohio St. 2d 187, 54 O.O. 2d 297, 267 N.E. 2d 427; *Tootle, supra.* Cf. *Flynn* v. *Bredbeck* (1946), 147 Ohio St. 49, 33 O.O. 243, 68 N.E. 2d 75. In contrast, the term "heirs at law," when given its ordinary meaning, has been held to include an adopted child. *Smith* v. *Hunter* (1912),

86 Ohio St. 106, 99 N.E. 91; *Tiedtke* v. *Tiedtke* (1952), 157 Ohio St. 554, 447 O.O. 411, 106 N.E. 2d 637.

Various presumptions or rules of construction have been historically utilized by the courts in this area of the law. One of these presumptive rules is that of "stranger to the adoption," with which we deal herein. Such rule basically is to the effect that there is a presumption that a testator or settlor intended to include a child adopted by him within a generally stated class, but where the testator or settlor is a stranger to an adoption of another, such as where the adoption takes place after the testator's death, it will be presumed that he did not intend the adopted child to be included within the designated class, unless a contrary intention clearly appears. *Phillips* v. *McConica* (1898), 59 Ohio St. 1, 9, 51 N.E. 445, 447; *Albright, supra,* at 680, 157 N.E. at 764; *Third Natl. Bank & Trust Co., supra,* paragraphs three and four of the syllabus; *Central Trust Co.* v. *Bovey, supra.*

The courts also must look to the circumstances surrounding the execution of the will or trust. The most important factor here would be the time of the adoption in relation to the execution of the will or trust, or to the death of the testator or settlor. If the facts show that the adoption took place within the lifetime of the testator or settlor, and he knew about and approved of such adoption, the adopted child may well be included within the class.

Also, of course, reviewing courts must look to the various statutes regulating the rights of an adopted child, including the current statutes and the legislative history of such statutes. Specifically, when construing an *inter vivos* trust, as here, a court should determine the intent of the settlor in light of the law existing at the time of the creation of the trust, since an *inter vivos* trust speaks from the date of its creation — not the date upon which the assets are distributed. *First Natl. Bank* v. *Tenney* (1956), 165 Ohio St. 513, 60 O.O. 481, 138 N.E. 2d 15, paragraph one of the syllabus. In construing the words used by a settlor, it is a well-established presumption that the testator or settlor was acquainted with the relevant then-existing statutes, their judicial interpretation and the effect they might have on the devolution of his estate. *Flynn, supra,* at 54, 33 O.O. at 245, 68 N.E. 2d at 78; *Third Natl. Bank & Trust Co., supra,* at 362, 47 O.O. at 260, 105 N.E. 2d at 577; *Central Trust Co., supra,* at 190, 54 O.O. 2d at 299, 267 N.E. 2d at 429. In 1944, when Charles Breyman created the *inter vivos* trust at issue, the "stranger to the adoption" doctrine was recognized, and he set forth no provisions in the trust contrary to the presumption that adopted children were not included in a gift to "living children of each deceased grandchild." See *Albright, supra* ("children"); *Davidson, supra* ("grandchildren"); *Bovey, supra* ("child").

However, appellees argue, and the court of appeals agreed, that the "stranger to the adoption" doctrine is no longer a rule of construction in Ohio, by virtue of R.C. 3107.15(A)(2), which "places adopted children on the same footing as natural children." *Tootle, supra,* at 245, 22 OBR at 421, 490 N.E. 2d at 880. That statute, effective January 1, 1977, provides:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"* * *

"(2) To create the relationship of

parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."

The timeliness of the applicability of an adoption statute such as R.C. 3107.15, as it relates to the beneficiary rights of adopted children, is an important consideration for a reviewing court, and goes directly to the question of what law governs, in point of time. While the general rule, as stated above, is that the law existing at the time an *inter vivos* trust is executed is the law which applies, a subsequent legislative enactment which changes the rights of inheritance of adopted persons may apply, depending on the intent of the General Assembly.[1]

In this regard, a statute will not be applied retrospectively unless a contrary intention clearly appears. Where a statute is to be applied prior to its effective date in such a manner as to entirely abrogate a longstanding common-law rule, the General Assembly must clearly state its intention in order to do so. R.C. 1.48; *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489.

The adoption statute construed here, R.C. 3107.15, does not specifically state that it should apply retrospec-

tively to *all* existing wills, but only that it shall apply to instruments, "whether executed before or after *the adoption is decreed.*" (Emphasis added.) Although the presumption embodied in the "stranger to the adoption" doctrine may no longer be applied subsequent to the effective date of the statute, the application of this doctrine has not been totally abrogated by the statutory change. The doctrine may still be utilized in the interpretation of certain wills and trust instruments executed prior to such effective date, January 1, 1977.

Reasonably interpreted, and given the absence of an express intention to apply its provisions retrospectively, R.C. 3107.15(A)(2) shall be applied prospectively, and subsequent to its effective date, January 1, 1977, to those documents, statutes, and instruments, whether executed before or after an adoption is decreed, which do not expressly exclude the adopted person from the law's or instruments' operation and effect. Provisions of an *inter vivos* trust shall continue to be governed by the law existing at the time of its creation, absent a contrary expression of intent within the trust instrument itself.

Our decision in *Tootle, supra,* is not to the contrary. That case concerned a will submitted to probate upon the death of the testator on November 8, 1926, which devised certain real estate to two life tenants, "and then to the heirs of their bodies." This court, construing the term "heirs

---

[1] As to the rights of an adopted person to inherit from an intestate ancestor, the law in Ohio is clear: the adopted person's rights to inherit are governed by the laws in force at the time of the death of the decedent and not the laws in force at the time of the adoption or thereafter. *Flynn* v. *Bredbeck, supra; Staley* v. *Honeyman* (1952), 157 Ohio St. 61, 47 O.O. 67, 104 N.E. 2d 172; *In re Estate of Millward* v. *Millward* (1957), 166 Ohio St. 243, 2 O.O. 2d 61, 141 N.E. 2d 462, paragraph three of the syllabus. Other states hold that the law in force at the time of adoption will determine such inheritance rights. See, generally, Annotation (1951), 18 A.L.R. 2d 960.

of the body," as that term was understood in 1925, held that "heirs of the body" was an express exclusion of adopted persons under R.C. 3107.15. *Id.* at 245-247, 22 OBR at 421-424, 490 N.E. 2d at 879-882, and paragraph one of the syllabus. The issue before us today, *i.e.,* the application of the "stranger to the adoption" doctrine, was not before us in *Tootle,* and we thus expressly declined to comment upon its effect in that case. *Id.* at 247, 22 OBR at 423, 490 N.E. 2d at 881, fn. 3. Consistent with our holding today, we simply applied the law in effect at the time of the testator's death (see fn. 1, *supra*) relative to the construction of "heirs of the body."

Finally, appellees argue that, in any event, the adoption statute in effect at the time Charles Breyman created his trust also abrogated the "stranger to the adoption" doctrine. We are unpersuaded, since appellees' arguments reflect an erroneous reading of the legislative history of the adoption statute and of our cases construing such legislative changes.

Prior to 1932 the rights of adopted persons were set forth in G.C. 8030 (109 Ohio Laws 177, 179-180). That section provided, in pertinent part, as follows:

"* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents * * *."

In construing this statute, this court held that adopted children were enabled to inherit from but not through their adopting parents. See *Albright, supra; Davidson, supra.* The "stranger to the adoption" doctrine was a valid rule of construction. *Bovey, supra* (construing a trust drawn in 1930).

The adoption statute was expanded with the enactment of G.C. 10512-19 (114 Ohio Laws 320, 474), effective January 1, 1932. That section added the following language to the prior statute after the limitation to the heirs of the body:

"* * * but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heirs or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing * * *."

We interpreted these provisions to overrule prior law and allow adopted children to inherit both from as well as through their parents. *Flynn* v. *Bredbeck, supra; Staley* v. *Honeyman* (1952), 157 Ohio St. 61, 47 O.O. 67, 104 N.E. 2d 172. When G.C. 10512-19 was renumbered G.C. 10512-23 upon the establishment of Ohio's "Adoption Code" (120 Ohio Laws 434, 440-441), effective January 1, 1944, no substantive changes were made to the relevant provisions above. But, see, *Conkle* v. *Conkle* (1972), 31 Ohio App. 2d 44, 60 O.O. 2d 144, 285 N.E. 2d 883. Thus, the law existing at the time of the execution of the Charles Breyman trust was restricted to the rights of inheritance of adopted children, by will or intestate succession, and did not speak to trust instruments. The law existing at this time also recognized the "stranger to the adoption" doctrine. *Davidson, supra* (construing a will admitted to probate in February 1944).

With the enactment of G.C. 8004-13 (124 Ohio Laws 178, 193), effective August 28, 1951, the rights of

adopted persons were further expanded by omitting the inheritance rights stated above at G.C. 10512-19 and in lieu thereof adding the following provision:

"* * * For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

"(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parent or parents * * *."

This provision, by its express language, was still not made specifically applicable to trust instruments.

G.C. 8004-13 remained basically unchanged as R.C. 3107.13 (see 129 Ohio Laws 1566 [1961]; 132 Ohio Laws, Part I, 971-972 [1968]) until 1972, when two significant changes were made. R.C. 3107.13 was amended effective January 26, 1972 (134 Ohio Laws, Part I, 499), to read, in pertinent part, as follows:

"* * * For all purposes under the laws of this state, including without limitation all laws, wills, and trust instruments governing inheritance of and succession to real or personal property and the taxation of an estate, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

"(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parents.
"* * *

"Unless an express intention to the contrary appears in a will or trust instrument, 'child,' 'children,' 'issue,' 'grandchild,' or 'grandchildren,' includes a legally adopted child, for the purpose of inheritance to, through, or from the adopting parents of such child, irrespective of when such will was executed or such trust was created."

The provisions of the amended statute for the first time made the right to inherit under the adoption statutes applicable to trust instruments. These revisions also provided that when the term "children" is used in a trust instrument, such term includes a legally adopted child irrespective of when the trust was created.

Thus, it was only after 1972 that the "stranger to the adoption" doctrine began to be eroded. The final expansion of the rights of adopted children came with the enactment of current R.C. 3107.15, effective in 1977. This section removed the limitation prohibiting adopted children from inheriting property limited to "heirs of the body" and, thus, although prospectively, fully accorded adopted children the same rights of inheritance as natural born children. *Tootle, supra,* at 250, 22 OBR at 426, 490 N.E. 2d at 883-884 (Douglas, J., dissenting). The abrogation of the "stranger to the adoption" doctrine has been a slow, deliberate process, and had not yet begun when Charles Breyman executed his trust in 1944.

Accordingly, based upon the law existing in 1944, we conclude that the presumption embodied in the "stranger to the adoption" doctrine is applicable to the Charles Breyman trust, consistent with the grantor's intent. Such intent was to include only natural

children in the distribution of assets of his trust estate.

The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and EVANS, JJ., concur.

JOHN R. EVANS, J., of the Third Appellate District, sitting for RESNICK, J.