OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Madeline M. Brown, appeals from a judgment of the Trumbull County Court of Common Pleas, Probate Division. For the following reasons, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
The following facts are relevant to this appeal. Although they never married, appellant and Carl Cross, the decedent, lived together for twenty-two years in a home owned by the decedent. At the time of his death, the decedent had five children from a previous marriage, all of whom were adults.
In 1996, the decedent, accompanied by his son, Howard J. Cross ("Cross"), went to the office of Thomas Palmer ("Palmer") for the purpose of updating his will. The decedent's previous will had left his property equally to his five children. Now, the decedent wished to provide appellant a place to live if he were to die before her. Accordingly, Palmer drafted a will in which appellant was permitted to reside in the home that the couple had lived in during the course of their relationship. In addition, the will provided that the right to live in the home was for appellant's benefit only, and would lapse if she moved from the residence. Other provisions included in the will pertained to a trust which would be created to pay the taxes and other expenses associated with the upkeep of the home.
On July 15, 1997, the decedent passed away. Appellant, extremely distraught over her companion's death, went to stay with her daughter, Nancy Reckart ("Reckart"). Decedent's will was subsequently admitted to probate, and Cross was appointed as the executor of the estate.
It is undisputed that at the time she left, appellant was unaware of the contents of the will, and, more specifically, of her right to live in the residence that she had shared with the decedent. In fact, soon after the decedent died, Cross placed a pad lock on the door of the home and failed to provide appellant with a key. However, Cross permitted appellant to return to the home to assist the decedent's family in sorting and eventually removing personal items.
Two weeks after the decedent died, Cross went to Reckart's residence to discuss the terms of the will with appellant. Cross explained that pursuant to his father's will, appellant was permitted to live rent-free in the home she had previously shared with the decedent. Reckart told Cross that appellant wished to live in the home, but that she was unable to live alone because she could not properly care for herself. When appellant's granddaughter offered to move into the home so she could care for appellant, Cross indicated that he was under the impression that, pursuant to the terms of the will, appellant was the only person allowed to live in the house. Appellant's granddaughter offered to pay rent while she was living there, but the offer was declined by Cross. At the conclusion of the conversation, Cross asked appellant to contact him if and when she wished to move back into the home.
Cross never received a response from appellant. As a result, Cross, acting as executor, filed a complaint for a will construction action in an effort to determine the rights and responsibilities of the various parties with respect to the language contained in the will. Appellant filed an answer to the complaint which included a counterclaim and cross-claim seeking both compensatory and punitive damages. In response, Cross filed a reply to appellant's claims in which he requested that they be dismissed for failure to state a cause of action and for a lack of subject matter jurisdiction. On March 10, 1998, the trial court granted Cross' motion and dismissed appellant's claims, finding that it did not have subject matter jurisdiction over them.
The case proceeded to trial on April 15, 1998. Cross argued at trial that, while appellant had a personal right to live at the home, no one else could live there with her. It was appellant's position, however, that the will granted her a life estate subject to defeasance, and that the restriction prohibiting anyone else from living there with her was void.
After considering all of the evidence, the trial court issued a judgment entry on December 16, 1998, in which it concluded that:
 "The Court being fully advised in the premises finds that the testator intended to grant Madeline M. Brown a limited right of residential occupancy. The Court further finds that such right is personal to Madeline M. Brown and that the testator did not intend for Madeline M. Brown's family or other persons to occupy the residence. * * *
 "THEREFORE, it is the opinion and holding of this Court that Item II of the Last Will and Testament of Carl A. Cross grants Madeline M. Brown a personal right to occupy the residence.
 "FURTHER, it is the opinion and holding of this Court that such right of occupancy is only for the benefit of Madeline M. Brown and does not extend to family members or care givers."
Appellant filed a timely notice of appeal, and asserts two assignments of error for our consideration:
 "[1.] The trial court erred to the prejudice of defendant, Madeline M. Brown, when it construed the will of Howard [sic] J. Cros [sic] as a grant of a personal right to occupancy.
 "[2.] The trial court erred in its judgment to the prejudice of defendant, Madeline M. Brown, when it pronounced that `such right of occupancy is only for the benefit of Madeline M. Brown and does not extend to family members or care givers.'"
Under her first assignment of error, appellant maintains that when a testator has provided a residence in which a particular beneficiary may reside until death or until she otherwise vacates the premises, the devise is a life estate subject to defeasance, as opposed to a fee simple conditional. We disagree.
The relevant portions of the decedent's will are as follows:
"ITEM II
 I direct that MADELINE M. BROWN be permitted to reside, rent free, in my residence property located at 132 College Street, West Farmington, Ohio 44491, provided she is living in my residence at the time of my death. I further direct that this right to reside is for her benefit only and shall lapse should she move from my residence property.
"ITEM III
 Should the said MADELINE M. BROWN be living in my residence property at the time of my death, I direct that Certificates of Deposit which I might own at the time of my death, or the proceeds therefrom, be placed in Trust for the benefit of the said MADELINE M. BROWN and hereby designate my son, HOWARD J. CROSS, as Trustee.
"* * *
 "Upon the death of the said MADELINE M. BROWN or should she no longer be entitled to reside in my residence property, I direct that this Trust shall terminate and the balance of the Trust assets be distributed equally among my children." (Emphasis in the original.)
According to appellant, the trial court focused solely on Item II of the will and failed to consider the effect of Item III when it rendered its decision. Appellant argues that Item III provides a remainder to the decedent's children upon her death with respect to the trust. As a result, appellant believes that when Item II and Item III are read together, it becomes clear that the provisions relating to appellant living in the decedent's home are inextricably tied with her death, and as such, she is entitled to a life estate subject to defeasance.
In rendering its decision that appellant was only entitled to a limited right of residential occupancy, the trial court in the instant matter relied on Winters Natl. Bank Trust Co. v. Shawen
(1964), 33 O.O.2d 28. The court in Winters determined that when an instrument does not give the right to sell the limited right to possession or to lease or rent out the premises, no life estate is created. In fact, the court determined that no estate is created at all. Instead, the devisee is only given a personal right to residential use.
Our research reveals that only one other Ohio court has since followed Winters. In Briggs v. Briggs (1983), Ross App. No. 977, unreported, at 6, 1983 Ohio App. LEXIS 13561, the will in question provided that the testator's niece could live in his home rent free for as long as she wanted. Based on this provision, the Fourth District Court of Appeals concluded that the niece did not have a life estate, and that she had no more than a personal right to reside in the property. The court's decision was based on the assumption that a life tenant usually is vested with the right to occupy, to rent, and to assign his life estate, and that without those basic elements, a life estate is not created. Id. See, also, First Natl. Bank of Joliet v. Baker (1976), 35 Ill. App.3d 676; Chile v. Beck (R.I. 1982), 452 A.2d 626.
Here, we agree that it is apparent from the decedent's will that appellant was not given a life estate to the property in question. There is no evidence in the record suggesting that the provision included incidents of a life estate, such as the power to assign, rent, or sell appellant's right to possession. In fact, there is no mention of a life estate anywhere in the will itself. The will is quite clear that appellant loses any and all rights granted to her under the will if she vacates the premises or is otherwise no longer entitled to reside in the home. There can be no clearer indication that appellant was only given a limited right of residential use, and that there was no intent to create a life estate. As a result, appellant's first assignment of error is overruled.
In her second assignment error, appellant argues that even if she were only entitled to a limited right of residential use as opposed to a life estate, the trial court erred in its interpretation of the decedent's intent as to the "for her benefit only" provision. According to appellant, the decedent was aware that she was unable to care for herself at the time he made his will. Thus, she claims that the decedent knew appellant would be unable to live by herself without assistance. As a result, any grant of residency would have been meaningless as interpreted by the trial court. Appellant further maintains that such a restriction is void because it operates as an unreasonable restraint and violates public policy.
When considering a question of will construction, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Stevens v. Natl. City Bank (1989),45 Ohio St.3d 276, 278, citing Ohio Citizens Bank v. Mills (1989),45 Ohio St.3d 153, 155. See, also, Townsend's Exrs. v. Townsend
(1874), 25 Ohio St. 477; Smith v. Koehne (Nov. 30, 1990), Ashtabula App. No. 89-A-1474, unreported, at 6, 1990 Ohio App. LEXIS 5224. Such intention must be determined from a review of the four corners of the will itself whenever possible. Sandy v.Mouhot (1982), 1 Ohio St.3d 143, 144. However, where the terms of a will are susceptible to multiple meanings, the trial court may consider the circumstances surrounding the drafting of the instrument, in order to arrive at a construction consistent with the overall intent of the testator. Wills v. Union Savings Trust (1982), 69 Ohio St.2d 382, paragraph two of the syllabus. See, also, Oliver v. Bank One, Dayton, N.A. (1991), 60 Ohio St.3d 32,34.
As a result, this court must determine whether the trial court's judgment as to the decedent's intent was against the manifest weight of the evidence. It is well-established that "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Tomcany v. Kirkpatrick (Apr. 9, 1999), Lake App. No. 98-L-018, unreported, at 4, 1999 Ohio App. LEXIS 1606. Accordingly, we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact. Gerijo, Inc.v. Fairfield (1994), 70 Ohio St.3d 223, 226; Svette v. Svette
(Aug. 27, 1999), Geauga App. No. 98-G-2168, unreported, at 9, 1999 Ohio App. LEXIS 3981. In the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment.Gerijo at 226; Svette at 9-10.
Here, the will provision in question states that the "right to reside [in the home] is for [appellant's] benefit only * * *." Based on this provision and the testimony at trial, the trial court concluded that, while the decedent wanted to provide appellant with a home in the event of his death, the decedent did not intend for appellant's family or other persons to occupy the residence with appellant. The court's holding even extended to non-family caregivers. After conducting an exhaustive examination of the record, and indulging every reasonable presumption in favor of the trial court's judgment and findings of fact, we conclude that the trial court's judgment was against the manifest weight of the evidence.
We agree that the phrase "for her benefit only" is ambiguous. As a result, this court must consider the circumstances surrounding the drafting of the decedent's will with the ultimate goal of ascertaining and carrying out the intent of the decedent.
Palmer, the attorney who drafted the will, testified that there was no discussion with the decedent concerning whether or not someone could live with appellant, whether it be a relative or a unrelated caregiver. The decedent only told him that he wanted to provide appellant a place to live upon his death. In fact, Palmer testified that the phrase "for her benefit only" was his interpretation of the decedent's request, and that it was not based on any specific language instruction by the testator. In other words, Palmer's later stated belief that the decedent did not want anyone living with appellant was mere speculation on his part.
Cross also testified that it was the decedent's intent to provide appellant a home. He indicated at trial that the only reason the will was updated was because his father told him that if he were to die before appellant, his father wanted her to live in his house. However, when the decedent made this request, Cross informed his father that the will as it was written would not allow for such a disposition. As a result, the decedent chose to draft a new will. Cross never indicated that his father told him that he did not want anyone living in the home with appellant.
There was, therefore, uncontroverted testimony that the testator wanted to provide appellant with a place to live after his death. The evidence also shows that appellant was in frail and declining health at the time the will was drafted; that the decedent and appellant were eighty-seven and seventy-six years-old, respectively; that they lived in a relationship where separately each one required care and assistance, but together they managed. Thus, the decedent knew that appellant would not be able to live in the home without some sort of a full-time caregiver.
The record also shows that in the approximately fifteen months between the drafting of the will and the decedent's death, appellant's condition did not improve. Both Reckart and appellant's granddaughter testified that, after the testator's death, appellant could not be relied on to take her medications regularly, and that they were the ones who made sure appellant ate appropriately.
While we noted earlier that the phrase "for her benefit only" clearly refuted the notion of a "life estate," there is no evidence in the record that the decedent wished to restrict appellant to a solitary residence. Under the circumstances which existed when the will was drafted, the decedent had to be cognizant of appellant's condition and needs. Hence, his redrafting of the will to provide her with a place to live would have been meaningless unless he intended appellant's residency to reflect the reality of those needs.
As a result, we conclude that an interpretation of the will which does not allow someone else to live in the home with appellant is inconsistent with the decedent's stated purpose in redrafting his will. We find no competent, credible evidence to support such an interpretation. Thus, the trial court's conclusion that appellant was given only a solitary right of residential use is against the manifest weight of the evidence.
For the foregoing reasons, appellant's first assignment of error is not well-taken. Appellant's second assignment of error, however, has merit. Pursuant to the terms of the will, appellant is entitled to reside in the home and to have someone live there with her. However, no life estate exists, and appellant does not have the power to assign, sell, or otherwise transfer any of the rights of residency granted to her under the will. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.