DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Kristina and Christopher Polacheck ("the Polachecks"), appeal from the decision of the Summit County Probate Court. This Court affirms.
 I. {¶ 2} In 1982, Mildred Middleton ("Middleton") created a revocable inter vivos trust ("the Trust"). Middleton entered into a trust agreement with Appellee First National Bank of Akron, now known as First Merit Bank. First Merit Bank continues to serve as trustee ("Trustee"). At the creation of the Trust, Middleton had two children, Gary Middleton ("Gary") and Mary Jean Kelly ("Mary Jean"). *Page 2 
Mary Jean was married and had two children (collectively referred to as "the Kellys"), John Andrew Kelly ("John") and Joseph Peter Kelly ("Joseph"). Gary was married to Marlene Blackie ("Marlene") and Marlene was pregnant with their first child. After the creation of the trust, Marlene and Gary had two children, Christopher Lee Middleton ("Christopher"), and Kristina Ann Middleton ("Kristina").
 {¶ 3} The Trust provided for the care of Middleton during her lifetime, and on her death, the Trust was to be held in a single fund, with the income of the Trust to be paid monthly to Gary and Mary Jean for life. Upon the death of the first of Middleton's children, the living child would continue to receive the income for life. The Trust further provided that at the death of Middleton's remaining child, the Trustee "shall distribute the remaining principle and any undistributed income to the grandchildren of the Grantor, per stirpes, and the trust shall terminate."
 {¶ 4} In 1987, Gary and Marlene divorced. Marlene retained custody of their two children. On February 8, 1990, Middleton died. Per the terms of the trust, Gary and Mary Jean received monthly payments. In 1992, Marlene married Donald Polacheck ("Donald"). Marlene and the children moved to Illinois. In 1998, Donald adopted Christopher and Kristina. The adoption took place in Illinois. *Page 3 
 {¶ 5} In 2000, Gary died. Under the term of the Trust, Mary Jean received the income from the Trust. On March 16, 2006, Mary Jean executed a disclaimer and renunciation of her life income interest and sought to have the Trust remainder distributed between her two children. She sought to exclude the Polachecks due to their 1998 Illinois adoption. The Trustee accepted Mary Jean's disclaimer and declared her interest terminated. On May 15, 2006, the Trustee filed a declaratory judgment action requesting a declaration as to who, under the terms of the Trust, were Middleton's grandchildren. The trial court determined that the Kellys were the only remaining members of the class of grandchildren and as such, ordered the trust assets distributed between them. The Polachecks timely appealed from this decision, raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW, IN FAILING TO APPLY THE JANUARY 1, 1977 VERSION OF [R.C.] 3107.15, WHICH WAS IN EFFECT ON JUNE 7, 1982."
 {¶ 6} In their first assignment of error, the Polachecks argue that the trial court erred as a matter of law in failing to apply the version of R.C. 3107.15 that was in effect when the Trust was created on June 7, 1982. We do not agree.
 {¶ 7} In the instant case, the trial court determined that because of their adoption, R.C. 3107.15 served to permanently divest the Polachecks of their remainder interest in the Trust. *Page 4 
 {¶ 8} The Polachecks argue that the trial court should have used the version of R.C. 3107.15 that was in effect at the creation of the trust. The crux of the Polachecks' argument is that the 1977 version of R.C.3107.15 appears to apply only to adoptions that occur within Ohio. Under the Polachecks' argument, because their adoption took place in Illinois, R.C. 3107.15 does not apply. We agree with the Polachecks that the Trust is governed by the law in existence at the time of its creation, absent any contrary intent in the Trust itself. First Natl. Bank of Cincinnativ. Tenney (1956), 165 Ohio St. 513, paragraph one of the syllabus. For the reasons which follow, however, we do not agree that the trial court erred when it applied the current version of the statute to this Trust. "While the general rule * * * is that the law existing at the time aninter vivos trust is executed is the law which applies, a subsequent legislative enactment which changes the rights of inheritance of adopted persons may apply, depending on the intent of the General Assembly."Ohio Citizens Bank v. Mills (1989), 45 Ohio St.3d 153, 157. In other words, we must apply the version of R.C. 3107.15 that was in effect at the creation of the trust, unless it is clear from the current version of the statute that the general assembly intended retroactive application. We find that the general assembly intended the current version to be given retroactive application.
 {¶ 9} The version of R.C. 3107.15 that was in effect in 1982 stated, in part, as follows:
 "(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall *Page 5 
have the following effects as to all matters within the jurisdiction or before a court of this state:
 "(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship[.]"
 {¶ 10} This is the version of the statute that was in effect from January 1, 1977 to the date of the first statutory amendment, effective May 30, 1996. The 1996 amendment inserted the language "or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18 of the Revised Code[,]" to (A) and added the language, "whether issued before or after the effective date of this amendment[,]" to (A) and (A)(2). In 2000, the general assembly slightly modified the statutory language by substituting "May 30, 1996" for "the effective date of this amendment" in divisions (A) and (A)(2). The current version of the statute, amended in 2002, effective March 14, 2003, modified other language not at issue in this opinion.
 {¶ 11} The current version of R.C. 3107.15(A) provides, in pertinent part:
 "(A) A final decree of adoption and an interlocutory order of adoption that has become final as issued by a court of this state, or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18
of the Revised Code, shall have the following effects as to all matters within the jurisdiction or before a *Page 6 
court of this state, whether issued before or after May 30, 1996[.]" (Emphasis added.)
 {¶ 12} We must determine if the addition of the language "whether issued before or after May 30, 1996[,]" in section (A) changes the application of R.C. 3107.15(A) from that of a prospective application to one of retroactive application. If prospective, we must apply the 1977 version of the statue, which, on its face, does not appear to consider adoptions outside of Ohio as cutting off familial ties. As such, the Polachecks argue, their Illinois adoption does not serve to permanently divest them of their interest in the Trust. If we are to retroactively apply the current version of the statute, as the Kellys argue, the Polachecks' adoption, regardless of the state in which it was issued, would divest them of their interest in the Trust.
 {¶ 13} The Polachecks cite Mills for the proposition that R.C. 3107.15
should be given prospective application. However, we note that theMills decision interpreted the 1977 version of the statute, which was in effect when the case was decided in 1989, and not the current version of the statute. Looking at the language in R.C. 3107.15(A)(2), the Ohio Supreme Court determined that the statute did "not specifically state that it should apply retrospectively to all existing wills, but only that it shall apply to instruments, `whether executed before or afterthe adoption is decreed."` (Emphasis sic.) Mills, 45 Ohio St.3d at 157. We note that this is the precise language that the Ohio General Assembly chose to amend with the 1996 amendment. It has been stated that the Ohio Supreme Court, in *Page 7 Mills, "invited the General Assembly to amend R.C. 3107.15 to state more clearly that its provisions would apply retrospectively. Newly amended R.C. 3107.15 is the General Assembly's response to the Mills invitation. Sub. S.B. No. 129 now clearly states that the effects of an adoption are to apply retrospectively[.]" (Internal citations omitted.) Fifth ThirdBank et al. v. Crosley, et al (1996), 79 Ohio Misc.2d 10, 18. See also,Fifth Third Bank v. Harris, 127 Ohio Misc.2d 1, 2003-Ohio-7361, at TJ18, citing Mills, 45 Ohio St.3d at 157 ("The legislature specifically made that statute applicable to trust instruments executed before or after May 30, 1996, and the statute can therefore be applied retrospectively.") Therefore, we find that the addition of the phrase "whether issued before or after May 30, 1996" to R.C. 3107.15(A) clearly indicates that the statute is to be applied retroactively. Clearly, the statute applies to both in state and out of state adoptions. Accordingly, the trial court did not err when it applied the current version of R.C. 3107.15.
 {¶ 14} The Polachecks' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE CLEAR INTENTION OF THE SETTLOR."
 {¶ 15} In their second assignment of error, the Polachecks contend that the trial court erred in failing to follow the clear intention of the settlor. We do not agree. *Page 8 
 {¶ 16} We first note that the Polachecks appear to argue in their first assignment of error about Middleton's intentions with regard to the creation of the Trust. Although these arguments were not properly argued in the Polachecks' first assignment of error, as they are so similarly related to their arguments in their second assignment of error, we will address them here.
 {¶ 17} We agree with the trial court's assessment that R.C. 3107.15
clearly serves to divest the Polachecks of any interest they may have had in the Trust. Again, R.C. 3107.15(A)(1) serves to terminate the Polachecks' legal relationship with Middleton
 "for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship[.]" (Emphasis added.)
We read this statute to divest the Polachecks of any interest they may have had in the Trust. Had the legislature intended to exempt a vested remainder interest subject to open, like the one at issue, it could have carved out an exception. As such an exception was not created, we are constrained by the broad language of the statute. We find that the Polachecks' adoption served to make them strangers to Middleton and as such, terminated their interest in the Trust.
 {¶ 18} To circumvent the consequences of the statute, Middleton was required to include the Polachecks by name or "some designation not based on a parent and child or blood relationship[.]" This did not occur. Middleton simply *Page 9 
referenced the term "grandchildren." See State Bank Trust Co. v.Deitrick (Apr. 15, 1997), 3d Dist. No. 4-96-27, *2. We find that under the terms of the Trust, Middelton did not show intent to circumvent the consequences of adoption when she made reference to "grandchildren." Accordingly, the Polachecks' second assignment of error is overruled.
 III. {¶ 19} The Polachecks' assignments of error are overruled and the judgment of the Summit County Probate Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 10 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
SLABY, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1