WILLS ET AL., APPELLEES, *v.*
UNION SAVINGS & TRUST CO., TRUSTEE;
THE CHOATE SCHOOL ET AL., APPELLANTS.

[Cite as Wills v. Union Savings & Trust (1982),
69 Ohio St. 2d 382.]

(No. 81-529—Decided February 24, 1982.)

*Mr. Frederick H. Loomis,* for appellees.

*Messrs. Baker & Hostetler* and *Mr. Oakley V. Andrews,* for appellant The Choate School.

*Mr. William J. Brown,* attorney general, and *Mr. Perry R. Silverman,* for appellant Attorney General.

*Messrs. Squire, Sanders & Dempsey* and *Mr. Michael P. McCullough,* for appellant Thiel College.

*Messrs. Mitchell, Mitchell & Reed* and *Mr. George B. Woodman,* for appellant Junior Achievement of Youngstown.

*Messrs. Hoppe, Frey, Hewitt & Milligan* and *Mr. Robert S. McGeough,* for appellant Junior Achievement of Warren.

CLIFFORD F. BROWN, J.   In any action seeking construction of a will the court's sole purpose is to ascertain and carry out the intention of the testator. Such intention must be ascertained from the words contained in the will. *Carr* v. *Stradley* (1977), 52 Ohio St. 2d 220, paragraph one of the syllabus; *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477, paragraphs one and two of the syllabus. In this case, there is no question Sampson intended to exercise the power of appointment in favor of defendant-appellant charities. The issue is whether he effectively carried out that intent by the language he employed.

Our duty to ascertain and carry out the intention of the testator requires us to consider the language used by the two testators in the two instruments under consideration. Mrs. Kirkpatrick, who created the testamentary trust, the assets of which are now in dispute, intended to create a special testa-

mentary power of appointment in her son over the trust assets. A "special power" is one limited by excluding certain persons from taking under the power of disposition given the appointee. See 43A Ohio Jurisprudence 2d 408-409, Powers, Section 5, and cases cited therein. Here, Mrs. Kirkpatrick limited her son's power of appointment by excluding as beneficiaries of the trust both his estate and creditors of his estate. By creating a special power of appointment Mrs. Kirkpatrick intended to avoid inclusion of her trust property in her son's estate, thereby protecting the assets from depletion by creditors and avoiding imposition of an estate tax on the Kirkpatrick trust assets at the time of Sampson's death.

When Sampson attempted to exercise his limited power of appointment, he specified the source of the power and complied with the command that the power be exercised through his last will and testament. If the power is deemed not effectively exercised, it is due to his choice of language commanding the property "be made a part of my estate," in apparent contradiction of the donor's express limitation on permissible beneficiaries. However, neither creditors nor the taxing authorities reached the assets.

Precedent with considerable vintage establishes that a power must be strictly pursued, and must be executed according to the manifest intent of the testator. *Taylor* v. *Galloway* (1823), 1 Ohio 232, 234. The lower courts chose to take the narrowest view possible of the attempted exercise, and concluded that Sampson violated an express limitation on the power of appointment.

Appellant charities contend that the term "be made a part of my estate" referred not to Sampson's probate estate, but rather, the term was used to permit use of the trust funds to satisfy the specific bequests made by Sampson to his lineal descendants, should his probate estate be insufficient for such purposes. The remainder of the trust funds would then be available for disposition "under the terms" of the residuary clause to the named charities.

Under Ohio law, gifts for charitable purposes are favored, and are construed to give them effect, if possible. *Gearhart* v. *Richardson* (1924), 109 Ohio St. 418. It is apparent that the donee of the power of appointment intended the defendant

charities to receive the assets of the Kirkpatrick trust. But for the ill-advised use of the term "be made a part of my estate" in Item IV of his will, such intent would clearly be effectuated.

Where a testator, by his will, expressly exercises a power of appointment, it is presumed that he intended to exercise it effectively and a court must construe the language used by the testator in exercising such power to give effect to the exercise if such a construction is possible. *Holmes* v. *Hrobon* (1953), 158 Ohio St. 508, 518; *McMerriman* v. *Schiel* (1923), 108 Ohio St. 334; *Banning* v. *Banning* (1861), 12 Ohio St. 437; *Pruden* v. *Pruden* (1862), 14 Ohio St. 251; 56 Ohio Jurisprudence 2d Wills, Sections 510, 523, 524, 535 and 583. See 4 Page on Wills, Sections 30.10 and 32.2.

The reasonable meaning that should be given to the words "my estate" as used in Item IV, consistent with Sampson's overall dispositive plan, is the total property over which the decedent had a power of testamentary disposition, both probate and non-probate. The words "and disposed of under the terms of this my Last Will and Testament" in Item IV incorporate by reference the dispositive "terms" of Item V[1] of Sampson's will.

We find that the term "estate", as used in Sampson's will, is susceptible to various meanings.[2] Although the words used in a will are to be taken in their primary or ordinary sense, there are situations when it is manifest from the context of the entire will or the subject matter that the testator intended to use them in a different sense. *Holmes* v. *Hrobon, supra* at 518. In such a case, it is incumbent on the courts to arrive at a construction consistent with the overall intent of the testator, so as to uphold all parts of the will. Such a construction requires the courts to consider the circumstances surrounding the drafting of the will.

As Judge Ranney observed many years ago:

"But language, at best and when used with propriety, is a very imperfect vehicle of thought, and we seldom appreciate

---

[2] Sampson referred variously to "the principal of my estate," "my residuary estate," and "the adjusted gross estate" in Item I of his will, while in Item III, he referred not only to "my estate" and "my adjusted gross estate," but also to "my estate for purposes of Federal Estate Tax." All these uses of "estate" may have different meanings in their various contexts.

correctly its nicer shades of meaning, without an accurate knowledge of the persons and things to which it is applied. It is in view of this fact, that the law not only allows but requires the instrument to be read in the light of the surrounding circumstances, and permits the introduction of such extrinsic evidence as will enable the court to place itself in his situation, to see things as he saw them, and to apply his language as he understood and intended it." *Pruden* v. *Pruden, supra,* at 256-257.

Evidence introduced at the trial indicates the testator's fear that his estate was insufficient to satisfy the specific bequest made to his children. For this reason, the language requiring the trust "be made a part of my estate" was included. Given this circumstance, the reasonable meaning of the phrase is that the trust assets would become part of the estate only in the event of a shortfall in the property available for the specific bequests. No such shortfall occurred. Therefore, the trust property need not have passed into Sampson's probate estate, but was used entirely as a charitable bequest, under his residuary clause. This is the reasonable meaning we attach to the phrase, thereby upholding all parts of the will.

The Probate Court, as a court of equity, had the power to supply any defect in the execution of a power granted a donee. *Barr* v. *Hatch* (1829), 3 Ohio 527, 529. " * * * But if by reason of mistake, accident or ignorance the power was defectively executed, it is within the power of the court in this case to make it effectual. 'Whenever a man, having power over an estate, whether of ownership or not, in discharge of his moral or natural obligations, shows an intention to execute such power, the court will operate upon the conscience of the heir or other person benefited by the default to make him perfect this intention.' *Chapman* v. *Gibson,* 3 Brown Ch., 229; *Barr* v. *Hatch,* 3 Ohio 527; Bispham, Eq., Secs. 193, 195." *Thomas* v. *Trustees of Ohio State University* (1904), 70 Ohio St. 92, 110. See 43A Ohio Jurisprudence 2d, 438-439 Powers, Section 45.

Given the expressed intent of the donee to exercise his power of appointment, and his designation of various charitable institutions as recipients of this bounty, this court finds and determines that the Probate Court should have exercised its inherent equitable powers to give effect to the attempted exercise at issue.

Accordingly, the judgment of the Court of Appeals is reversed. The power of appointment was clearly expressed and exercised by Sampson in Item IV of his will to the named beneficiaries in Item V thereof, and this cause is remanded to the Probate Court for disposition consistent with this judgment.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., and W. BROWN, J., dissent.