OLIVER, APPELLEE, *v.* BANK ONE, DAYTON, N.A.; HOPPER, EXECUTOR, APPELLEE; REIMULLER ET AL., APPELLANTS.

[Cite as Oliver *v.* Bank One, Dayton, N.A. (1991), 60 Ohio St. 3d 32.]

(No. 90-530—Submitted February 6, 1991—Decided May 29, 1991.)

*Robert F. Jefferis,* for appellee Oliver.

*Hanes, Schipfer, Hurley, McClurg, Cooper & Graber, Thomas H. Graber II* and *Roger L. Hurley,* for appellee Hopper.

*Thompson, Hine & Flory, C. Terry Johnson, David M. Rickert, Deborah D. Hunt* and *Teresa D. Jones,* for appellants Reimuller, Osie Bair Johnson, Wanda Bair, Wolfgang and Williams.

EVANS, J. This is a will construction case in which we must determine the disposition of certain bequests to beneficiaries who predeceased the testator.

Because both the appellants and the appellees address arguments in their briefs to the application of the anti-lapse statute in this case, we make the following observations. Under the common law a testamentary gift to a beneficiary who predeceased the testator lapsed even if the beneficiary was related to the testator by blood. Today there are two ways to avoid the lapse of a bequest when the beneficiary predeceases the testator. One is through the application of R.C. 2107.52, the Ohio anti-lapse statute. The other way is through an expression of the testator's intention that the bequest not lapse.

The court of appeals decided this case on the basis of the testator's intention as determined from all the circumstances without relying on the anti-lapse statute to save the bequest. Accordingly, we will begin our analysis of this case on the basis of the testator's intention.

In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Such intention must be ascertained from the words contained in the will. *Carr* v. *Stradley* (1977), 52 Ohio St. 2d 220, 6 O.O. 3d 469, 371 N.E. 2d 540, paragraph one of the syllabus; *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477, paragraphs one and two of the syllabus. The court may consider extrinsic evidence to determine the testator's intention only when the language used in the will creates doubt as to the meaning of the will. *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 145, 1 OBR 178, 180, 438 N.E. 2d 117, 118; *Wills* v. *Union Savings & Trust Co.* (1982), 69 Ohio St. 2d 382, 23 O.O. 3d 350, 433 N.E. 2d 152, paragraph two of the syllabus.

We note that none of the briefs filed in this appeal points to any ambiguity or area of doubt in the will of Edna Shiverdecker which would justify turning to extrinsic evidence to determine the testator's intention. In-

deed, the opinion of the court of appeals did not indicate any ambiguity or doubt as a justification for resorting to extrinsic evidence. The court merely seized on the stipulated fact that reciprocal wills had been executed and developed the testator's intention from that starting point.

It is only by introducing the fact that the testator signed a reciprocal will with her husband on September 26, 1966, that a question concerning the use of the term "my relatives" can be raised. However, under the rule of construction cited above we can find no basis upon which to consider the fact that Edna Shiverdecker signed a reciprocal will with her husband. Our examination of the will of Edna Shiverdecker discloses no doubt or ambiguity which would justify the use of extrinsic evidence to determine the meaning of the will or any of its provisions.

The following language found in Item III(B) of Edna Shiverdecker's will is of particular significance:

"(b) If upon my husband's sister's decease before said fund is exhausted, *or if she predeceases me in death,* the said fund or remainder of said trust fund shall be paid over and distributed to her daughters hereinafter named in the proportions set after each name, * * *." (Emphasis added.)

This language demonstrates beyond all doubt that the testator knew what had to be said in order to preserve a bequest for the issue of a beneficiary who was not related by blood. The provision cannot be explained away on the basis that this "saving language" is required because the bequest is a trust. The language does more than dispose of the remainder interest in a trust after the death of the income beneficiary; it also preserves the entire gift for the daughters if the trust never comes into existence. We conclude that the testator could have included language of similar import in any of the other bequests under Item III of her will if she intended to preserve that gift for the issue of a beneficiary who had predeceased her.

Furthermore, even if we agree, *arguendo,* that there is doubt as to the meaning of the will of Edna Shiverdecker, we think the mere fact that the testator and her husband signed reciprocal wills in 1966 is insufficient evidence to determine the testator's intention in this matter. We note that there is no evidence of an agreement to leave the will of the survivor unchanged after the death of the first spouse. Many such reciprocal wills are signed by the parties with the understanding that the survivor will inherit everything and will be free to make appropriate changes concerning the disposition of the estate later in life. It is entirely possible that Edna Shiverdecker discussed the provisions of her will with her attorney in the light of her husband's death and determined that the existing provisions properly expressed her intentions, including the lapse of bequests to beneficiaries not related by blood.

The other way in which these bequests might be saved involves the application of R.C. 2107.52, the Ohio anti-lapse statute.[1] In this case the will establishes that the bequests in ques-

---

[1] R.C. 2107.52 provides:

"When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator. If the testator devised a residuary estate or the entire estate after debts, other legacies and devises, general or specific, or an interest less than a fee or absolute ownership

tion were made to beneficiaries related by affinity. Under these circumstances, we conclude that the anti-lapse statute has no application here. It is well-settled in Ohio that the anti-lapse statute applies only to "relatives" who are related by consanguinity. *Schaefer* v. *Bernhardt* (1907), 76 Ohio St. 443, 81 N.E. 640, paragraph one of the syllabus. Thus these bequests cannot be saved by application of this statute.

We hold that the will of Edna Shiverdecker is clear on its face as to the intention of the testator. Therefore, reference to extrinsic evidence is unnecessary to determine testator's intention and such reference will not be permitted. The probate court was correct in ignoring the stipulation of fact concerning the execution of reciprocal wills. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the probate court.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

HOLMES, J., concurs separately.

JOHN R. EVANS, J., of the Third Appellate District, sitting for H. BROWN, J.

HOLMES, J., concurring. The majority correctly states the established law of Ohio as previously pronounced by this court on the interpretation of Ohio's anti-lapse statute. See R.C. 2107.52. This court has held that under the anti-lapse statute the term "relatives" is restricted to persons who are related to the testator by consanguinity and does not include "relatives" by way of marriage as in this case. *Schaefer* v. *Bernhardt* (1907), 76 Ohio St. 443, 81 N.E. 640.

In all reviews of wills and trusts, however, courts attempt to look for the testator's intent within the four corners of the will itself without applying extraneous evidence of such intent.

The court of appeals, in striving to carry out the intent of both the predeceased husband and the testator wife who had reciprocal wills, applied a new rule. Such rule was to the effect that in the case of certain reciprocal wills, the term "relatives" shall include persons related by both consanguinity and affinity for purposes of applying the anti-lapse statute. This, I believe, to be a novel, and basically sound, rule where it can be found within the instrument itself that such is the intention of the testator. Here, there was no specific language in the will to the effect that in the event of the predecease of the person named as a residual beneficiary such interest would go to the issue of such named beneficiary. Neither was there language in the will alluding to the fact that the disposition under the testator's will had been so drafted in keeping with the existence of a reciprocal will of her husband. Therefore, as stated by the majority opinion here, there had to be extraneous evidence as to the testator's intent, *i.e.,* evidence that there were indeed such reciprocal wills. Thus, I must agree with the majority that this

---

to such devisee and relatives of the testator and such devisee leaves no issue, the estate devised shall vest in such other devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, unless a different disposition is made or required by the will."

will must be read, and so interpreted, within its four corners, and the anti-lapse statute interpreted in light of this court's former interpretations of such statute. Although, as I have previously mentioned, the rule as fashioned by the court of appeals here has considerable merit based upon the goal of basically accomplishing the intent of the testator, I believe such a result should only be reached by legislative enactment. This is due to the great number of reciprocal wills which have been written in Ohio where it may reasonably be concluded that such wills have been drafted in light of the prior interpretations of the anti-lapse statute by this court.