CHURCH, Exr.,

v.

MORGAN, Appellee; Cobbs, Appellant.

[Cite as *Church v. Morgan* (1996), 115 Ohio App.3d 477.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 96CA6.

Decided Nov. 1, 1996.

*Theisen, Brock, Frye, Erb & Leeper Co., L.P.A.,* and *Jerry A. Brock,* for appellant.

*Phillips, Gardill, Kaiser & Altmeyer* and *Elgine Heceta McArdle,* for appellee, Spring Fleming Morgan.

HARSHA, Judge.

This is an appeal from a judgment of the Washington County Court of Common Pleas, Probate Division, construing the last will and testament of Minnie Frances Lacy.

On February 27, 1995, Lacy executed her will at her attorney's office in Belpre, Ohio. The relevant portions of this will provided:

"ITEM II. *I give, devise and bequeath to SPRING FLEMING*, of 884 26th Street, Altoona, Pennsylvania, *all funds located in the following accounts:*

"(1) A $10,000.00 certificate of deposit and any and all accumulated interest in CD # 6178, in my name at Belpre Savings Bank, of Belpre, Ohio;

"(2) A $5,000.00 certificate of deposit and any and all accumulated interest in CD # 005243, in my name at Belpre Savings Bank, of Belpre, Ohio;

"(3) *Savings Account #72424, in my name at Belpre Savings Bank, of Belpre, Ohio;* and

"(4) Savings Account # 18 1356 0, in my name at the Peoples Banking and Trust Company, of Belpre, Ohio.

"ITEM III. *I give, devise and bequeath to my sister-in-law, ELLENE LACY COBBS*, of New Brighton, Pennsylvania, *all the rest, residue and remainder of the property which I may own at the time of my death*, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this Will, provided she survives me." (Emphasis added.)

At the moment Lacy executed her will on February 27, 1995, there was $94,108.25 in savings account No. 72424 at the Belpre Savings Bank. Lacy had been taken to her attorney's office that day to sign her will by her long-time friend, accountant Samuel Church, who held a power of attorney. Although this will also named Church as the eventual executor of Lacy's estate, he testified that he had no knowledge of the specific dispositions enumerated above until after her death approximately two and one-half months later.[1]

During the return drive home after she signed the will, Church mentioned to Lacy that she should consider transferring money from her lower-yielding savings accounts to higher-yielding certificates of deposit. Lacy apparently had about six such accounts, although only two had relatively large account balances.

---

1. At the outset, it is important to note that there is absolutely no evidence that any of the transactions discussed in this case personally benefited Church in any way whatsoever. We also note that there are no allegations that Church engaged in any overreaching conduct or acted in any manner other than in the best interests of Lacy at all times.

Church and Lacy then retrieved the passbooks for the two largest savings accounts and drove to the Belpre Savings Bank.

Church stated that while at the Belpre Savings Bank, he handled the entire transaction for the opening of the new certificates of deposit; however, since he did not have his power of attorney with him, Lacy actually signed the necessary documents.[2] The funds from each of the two savings accounts were used to open two separate certificates of deposit. One such certificate of deposit, No. 53029825, was funded with $90,000 transferred from Lacy's savings account No. 72424. Lacy died in May 1995, without amending any of her testamentary dispositions.

On June 29, 1995, Church, as executor of Lacy's estate, filed a complaint for the construction of her will. In this complaint, Church named the two beneficiaries under the will, appellant Ellene Lacy Cobbs and appellee Spring Fleming, as defendants. Church was concerned that the transfer of funds from savings account No. 72424 to certificate of deposit No. 53029825 had inadvertently resulted in a $90,000 ademption [3] of Lacy's specific bequest to Ellene Lacy Cobbs. However, since such a result was not what Lacy intended, Church sought instruction from the probate court as to the disposition of those funds.

The trial court conducted an evidentiary hearing on this motion. Pursuant to a motion *in limine* filed on behalf of appellant Cobbs, the court prohibited the attorney who drafted Lacy's will from testifying about her testamentary intentions. However, the court did allow Church to testify about the circumstances surrounding the $90,000 transfer of funds. According to Church, this transfer was initiated at his direction for the sole purpose of ensuring a higher rate of return than that currently available in the savings account. Based on this testimony, and the express language of the will, the court held that Lacy bequested "the funds" located in the account and not the account itself. Therefore, the court held that appellee Fleming was entitled to the $90,000 used to open the certificate of deposit account.

Appellant appealed this judgment and asserts the following assignments of error:

I. "The trial court erred in failing to determine that when the language of the will is that 'I give all funds located in savings account # 72424 in my name at

---

**2.** Church testified that Lacy was unaware of which savings accounts the funds were being transferred from and did not read, nor did he instruct her to read, any of the documents she signed.

**3.** The principle of ademption refers to a taking away of a specific bequest and occurs when the object of the legacy ceases to exist. *In re Estate of Hegel* (1996), 76 Ohio St.3d 476, 477, 668 N.E.2d 474, 475–476.

Belpre Savings Bank of Belpre, Ohio', the language is so clear as to preclude evidence regarding facts about transfers from account no. 72424." [4]

II. "The trial court erred in failing to hold that the transfer of $90,000 from account no. 72424 to another savings account caused an ademption to occur as to $90,000 under will language that says I give 'all funds located in savings account no. 72424 in my name at Belpre Savings Bank of Belpre, Ohio' to Spring Fleming and everything else to Ellene Lacy Cobbs."

III. "The court erred as a matter of law in finding that a specific bequest of account no. 72424 included $90,000 held in certificate of deposit no. 53029825."

Appellant's first assignment of error argues that the trial court improperly considered extrinsic evidence concerning the circumstances surrounding the $90,000 transfer from the savings account when it construed Lacy's will. For the reasons that follow, we reluctantly agree.

It is well settled that judgments involving the construction of a will are reviewed by appellate courts on a *de novo* basis as a matter of law. *Leyshon v. Miller* (Oct. 20, 1994), Washington App. No. 93CA37, unreported, 1994 WL 585743; *In re Estate of Peters* (June 15, 1994), Athens App. Nos. 1553 and 1560, unreported, 1994 WL 273402. The most fundamental tenet for the construction of a will mandates that the court ascertain and carry out, within the bounds of the law, the intent of the testator. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706, 708; *Oliver v. Bank One, Dayton, N.A.* (1991), 60 Ohio St.3d 32, 34, 573 N.E.2d 55, 57. Therefore, when the language of the will is clear and unambiguous, the testator's intent must be ascertained from the express terms of the will itself. *Domo* at 314, 612 N.E.2d at 708. Only when the express language of the will creates doubt as to its meaning may the court consider extrinsic evidence to determine the testator's intent. *Oliver* at 34, 573 N.E.2d at 57. See, also, *In re Estate of Evans* (1956), 165 Ohio St. 27, 30, 59 O.O. 43, 45, 133 N.E.2d 128, 130.

Unfortunately for Fleming, the words of Lacy's will clearly and unambiguously express her testamentary intent about the disposition of her estate. The second provision of her will enumerates several specific bequests to Ms. Fleming, testator's niece, one of which states, "I give, devise and bequeath to SPRING FLEMING * * * all funds located in the following accounts: * * * Savings Account # 72424, in my name at Belpre Savings Bank, of Belpre, Ohio." Since the express language contained within the four corners of this will creates no doubt as to its meaning, neither the lower court nor this court may consider

---

4. This assignment of error is quoted from the "Correction to Brief of Defendant–Appellant, Ellene Lacy Cobbs" filed on March 25, 1996.

any extrinsic evidence to determine Lacy's intent. . At the time of testator's death,[5] savings account No. 72424, in Lacy's name at Belpre Savings Bank in Belpre, Ohio, contained $4,108.25 plus interest. Pursuant to the express terms of the specific bequest cited above, appellee is thereby entitled to receive $4,108.25 plus interest from savings account No. 72424. See *In re Estate of Evans, supra,* 165 Ohio St. 27, 59 O.O. 43, 133 N.E.2d 128, paragraph two of the syllabus, which states:

"A specific bequest to a designated beneficiary of 'all cash in the box on the desk in the back room of my home' is plain and unambiguous, and such beneficiary, *on the death* of the testator, takes such amount of cash as is in the box *at that time.*" (Emphasis added.)

However, the executor has submitted extrinsic evidence that $90,000 was withdrawn from that account, literally within hours of the execution of the will, to fund a certificate of deposit at a higher rate of interest. Even though that extrinsic evidence might indicate that Lacy intended the $90,000 to remain part of Fleming's specific bequest, we are nevertheless bound to ignore that evidence and construe the terms of the will as written by the testator. To do otherwise would result in this court's rewriting the testator's will, an action which is clearly precluded by law. *Cleveland Trust Co. v. Frost* (1957), 166 Ohio St. 329, 2 O.O.2d 234, 142 N.E.2d 507; *Bachman v. Swearingen* (Feb. 8, 1983), Delaware App. No. 82–CA–24, unreported, 1983 WL 6369; 32 Ohio Jurisprudence 3d (1981), Decedent's Estates, Section 526.

We admit that it is tempting in this case to substitute our interpretation of the testator's intent for the clear language of the will because the extrinsic evidence is capable of being construed to imply the intent to benefit Spring Fleming. However, we believe courts begin a treacherous descent upon a slippery slope when they start substituting their judgment in place of the express language of a will. The fact that the result in this case seems inequitable does not negate the potentially greater injury to jurisprudence were we to defer to our hearts rather than our minds.

Although this result may be inequitable, it is the only possible legal result given the record as it exists before us now. The express terms of the will are unambiguous. It is only by introducing the extrinsic evidence of the substantial transfer of funds on the day the will was executed that testator's intent may appear unclear. However, our independent examination of the will discloses no basis upon which to justify a consideration of the extrinsic evidence admitted by

---

5. It is fundamental probate law that a will speaks as of the testator's time of death, not as of the date of execution of the document. *In re Estate of Evans* (1956), 165 Ohio St. 27, 59 O.O. 43, 133 N.E.2d 128, paragraph one of the syllabus.

the lower court. This is especially true in light of the continued existence of account No. 72424 at the time of death.

Therefore, we hold that the will of Minnie Frances Lacy, on its face, clearly and unambiguously expresses her testamentary intentions. Any reference to the extrinsic evidence submitted by the executor in this case is unnecessary and cannot be permitted. As a result, the lower court erred in its admission and consideration of the extrinsic evidence in order to determine testator's intentions. Accordingly, certificate of deposit No. 53029825, which was not explicitly disposed of by the will, becomes part of the residue of testator's estate and must, by law, pass to the residuary beneficiary, Cobbs. See *In re Estate of Evans, supra.* Appellant's first and second assignments of error are thereby sustained.[6]

Accordingly, we reverse the judgment of the Washington County Court of Common Pleas, Probate Division, and instruct the lower court to enter judgment consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

KLINE, J., dissents.

KLINE, Judge, dissenting.

I respectfully dissent. I agree that Minnie Frances Lacy executed an unambiguous last will and testament on February 27, 1995. However, she did not say in Item II of her last will that the funds must remain in the same specified CDs and savings accounts at the time of her death.

"The court's function in construing a will * * * is to determine and apply the testator's intent as expressed in the language of the whole will, and read in light of the applicable law, and circumstances surrounding the will's execution." *Cent. Trust Co. v. Smith* (1990), 50 Ohio St.3d 133, 136, 553 N.E.2d 265, 269. Courts must ascertain and give effect to the intent of the testator wherever legally possible. The express language of the last will and testament normally provides the court with the indicators of the testator's intentions. "However, * * * other factors must be considered. * * * [V]arious presumptions or *rules of construction have historically been utilized by courts in this area of the law.*" (Emphasis added.) *Id.,* citing *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 155, 543 N.E.2d 1206, 1208–1209.

---

6. Based on our disposition, appellant's remaining assignment of error is rendered moot. See App.R. 12(A)(1)(c).

" 'A will speaks from the time of execution as to its meaning and from the death of testator as to its effect and operation.' " *Id.* at 137, 553 N.E.2d at 270, fn. 2, quoting 4 Page on Wills (Bowe & Parker Rev.1961) 165, Section 30.26. Pursuant to an established rule of construction, "a general description of * * * property shows that testator intends the * * * property as [it exists] at his death. A specific description of * * * property so as to distinguish [it] from other * * * property as [it exists] when the will is made, usually shows that testator makes his will with reference to the * * * property * * * as [it exists] at the time that the will is made." 4 Page on Wills (Bowe & Parker Rev.1961) 165, Section 30.26.

Applying the above rule of construction, I believe that the specific descriptions of the bequests in Item II of the will refer to the property as it existed at the exact time Lacy signed the document. Lacy bequeathed "all funds located in" the specified accounts at the time she executed her will. The $90,000 transferred from savings account No. 72424 is money that was funds located in that account at the time Lacy executed her will. Moreover, the $90,000 transferred out of the specified savings account does not pass pursuant to Item III because Lacy did not "acquire or become entitled to [the $90,000.00] after the execution of this Will."

The majority cites *In re Estate of Evans* (1956), 165 Ohio St. 27, 59 O.O. 43, 133 N.E.2d 128, paragraph two of the syllabus, which states as follows:

"A specific bequest to a designated beneficiary of 'all cash in the box on the desk in the back room of my home' is plain and unambiguous, and such beneficiary, *on the death* of the testator, takes such amount of cash as is in the box *at that time.*" (Emphasis added.)

I agree. *In re Estate of Evans* is consistent with the rule of construction cited earlier in this dissent. "All cash in the box" is a general description of property while "all funds located in * * * savings account # 72424" is a specific description of property. Thus, my dissent is not contrary to *In re Estate of Evans.*

An example will help illustrate why detailed descriptions usually refer to the time of the execution of the will instead of the date of death. Here, Spring Fleming, of 884 26th Street, Altoona, Pennsylvania, inherits under Item II and Ellene Lacy Cobbs, of New Brighton, Pennsylvania, inherits under Item III. Lacy did not provide that Fleming and Cobbs still had to reside at these addresses to inherit at her death. Thus, I believe Fleming and Cobbs can inherit even if they live at different addresses at the time of Lacy's death. Likewise, I believe Item II identifies funds located in specified CDs and savings account numbers as of February 27, 1995 instead of the date of Lacy's death.

Accordingly, I would overrule all three assignments of error and affirm the judgment of the trial court.