[Cite as *Bogar v. Baker*, 2017-Ohio-7766.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHARLES A. BOGAR | ) | CASE NO. 16 MA 0138 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MARK BAKER, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas, Probate Division, of Mahoning
County, Ohio
Case No. 2015 CI 00041

JUDGMENT:      Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Thomas G. Carey, Jr.
Atty. Matthew M. Ries
Harrington, Hoppe & Mitchell, LLC
108 Main Avenue, Suite 500
Warren, Ohio  44481

For Defendants-Appellees:      Atty. David P. Powers
Stacey & Powers Co., LPA
33 Pittsburgh Street
P.O. Box 255
Columbiana, Ohio  44408

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated:  September 21, 2017

WAITE, J.

**{¶1}** Appellant, Charles A. Bogar, the sole specific beneficiary in the last will and testament of Thomas E. Bogar, appeals the judgment entry of the Probate Division of the Mahoning County Court of Common Pleas in this will construction case. Appellant contends that the probate court erred in concluding that a specific bequest of "the real estate located at 13300 Diagonal Road, Salem, Ohio together with all contents of said real estate" does not include farm equipment and vehicles located on the property. (8/31/16 J.E., p. 2.) Appellees are Abraham Alexander, Benjamin Alexander, Brandon Beeson, Susan Bogar, and Jennifer Bogar, the residual beneficiaries, and Mark Baker, who is both a residual beneficiary and the executor of the will. For the following reasons, we find that there is a latent ambiguity in the will and remand this matter for further consideration by the probate court.

<u>Facts and Procedural History</u>

**{¶2}** This matter was scheduled for an evidentiary hearing before the probate court, but the parties waived the hearing and submitted the matter on briefs. Twelve written stipulations and the affidavit of Mary Jane Bogar were the only extrinsic evidence before the probate court. The following facts are taken from the stipulations unless otherwise noted.

**{¶3}** Thomas E. Bogar, Appellant's brother, died testate on June 20, 2014. An inventory and appraisal of his estate was filed with the probate court on December 30, 2014 and approved by the court. (5/25/16 Stipulations, p. 1.) Item 9 provides a valuation of $99,705.00 for all personal property found and located at

13300 Diagonal Road, Salem, Ohio. The inventory and appraisal also includes an itemized appraisal of the personal property.

{¶4} Thomas's last will and testament contained only two bequests, one specific and one residual. Item II reads, in its entirety:

> I give, devise, and bequeath to my brother, CHARLES A. BOGAR, if he
> shall survive me, the real estate at 13300 Diagonal Road, Salem, Ohio,
> together with all contents of said real estate, if owned by me at the time
> of my death.

(Thomas E. Bogar Will, p. 1.) The parties stipulated that Thomas owned the real estate at 13300 Diagonal Road, Salem, Ohio at the time of his death. According to the affidavit of Mary Jane Bogar, Thomas's aunt and a resident of 13300 Diagonal Road, the real estate measured roughly 31 acres, and included a house and out buildings. (5/25/16 Mary Jane Bogar Aff.) Mary Jane also averred that Thomas was "the owner of all tools, farm equipment and machinery, all farm vehicles, all lawn and garden equipment, and all of the contents of all of the outbuildings and garage building located at the premises." *Id.*

{¶5} Item III, the residual clause, reads in its entirety:

> All the rest, residue and remainder of my property whether real,
> personal or mixed and wheresoever situated which I may own or have
> the right to dispose of at the time of my death, I give, devise and
> bequeath to ABRAHAM ALEXANDER, BENJAMIN ALEXANDER,
> BRANDON BEESON, my niece, SUSAN BOGAR, my niece,

JENNIFER BOGAR, and MARK BAKER, share and share alike or to the survivor or survivors of them.

(Thomas E. Bogar Will, p. 1.)

**{¶6}** During the administration of the will, a dispute arose between Appellant and Baker, who is both the executor and a residual beneficiary, regarding the correct interpretation of the phrase "all contents of said real estate" in the specific bequest to Appellant. Appellant interpreted that phrase to include all of the personal and other property physically located on the real estate on the date of Thomas's death. Baker argued that the phrase was to be interpreted to include only household goods and personalty.

**{¶7}** The probate court agreed with Baker. According to the judgment entry, the inventory valued Thomas's tangible personal property at $99,705.00; intangible personal property at $624,811.06; and real property at $173,070.00, for a gross estate value of $915,586.06. The appraisal divided the tangible personal property into three categories: (1) Trucks-Auto-Farm Equipment; (2) Shop Tools-Miscellaneous; and (3) Heated Shop. While the appraisal was cited by the probate court in the judgment entry, it was not included in the record on appeal. The probate court found that all of the personal property in the category of Trucks-Auto-Farm Equipment ("vehicles and farm equipment") passed to Appellees through the residual clause of the will.

**{¶8}** The probate court stated that there was no evidence showing that Thomas intended to include the vehicles and farm equipment in the specific bequest

to Appellee. The court reasoned that "any item such as a motor vehicle or specialized farm vehicle or equipment would be excluded from being considered personality [sic] items due to the fact of their very nature of increased value and the ability to title such items." (8/31/16 J.E., p. 2.)

**{¶9}** The probate court's reliance on the term "personalty" is derived from a 1944 case from the Second District Court of Appeals, *McAlpin v. Obenour*, 75 Ohio App. 268, 61 N.E.2d 820 (1944). The *McAlpin* panel held that a specific bequest of "all my personal property located in the room now occupied by me" did not include certificates of deposit or checks, even though the certificates and checks themselves were found in that room after the death of the testatrix. *Id.* at syllabus. Because the probate court found that there was almost no caselaw addressing the evidentiary standard to be used in will interpretation cases, the court adopted the reasoning in *McAlpin*, holding, "[*McAlpin*] Court relied upon the fact that there was no extrinsic evidence presented that showed it was the intention of the decedent to give the *Certificates of Deposit* and the check to the specific bequest beneficiary." (Emphasis in original.) (8/31/16 J.E., p. 2.)

**{¶10}** The probate court also relied on a New York case, *Ball v. Dickson*, 83 Hun 344, 31 N.Y.S. 990 (1894) (cited in *McAlpin*), in which the court held that a bequest of "all the personal property in the house and in the other buildings on said premises" did not include promissory notes, certificates of deposits, and bank passbooks which were, at the time of the will's execution, in the safe at the dwelling. *Id.* at Headnote. The *Ball* court held:

> If we should give to the words "personal property," in the first clause of the will, their broadest and most comprehensive signification, they would undoubtedly carry the contents of the safe. Property is divided into two general divisions, real property and personal property. Had the will failed to dispose of the contents of the safe by the residuary clause, there are authorities justifying the giving to such words their broadest meaning; but we are not required to adopt that rule here, for, as stated, if the property in question was not bequeathed to William, it passed to the legatees mentioned in the residuary clause.

*Id.* at 991-992.

**{¶11}** Based on the foregoing caselaw, and the absence of extrinsic evidence establishing Thomas's intent to transfer "titled vehicles and farm equipment" to Appellant, the probate court defined "contents of said real estate" as "all household goods, personal property furnishing [sic], including all contents of the outbuildings which are typically found in a home environment." (8/31/16 J.E., p. 3.) As previously stated, the probate court determined that motor vehicles, specialized farm vehicles and equipment were excluded from the specific bequest because they were of "increased value" and because of "the ability to title" these items. *Id.*

**{¶12}** Finding that an ambiguity existed in the specific bequest because the meaning of "contents of said real estate" was not clear, the probate court resolved the ambiguity in favor of the residual beneficiaries using *McAlpin* and *Ball, supra*.

Law

**{¶13}** An appellate court reviews the decision of the probate court to construe the language of a will on a *de novo* basis as a matter of law. *Belardo v. Belardo*, 187 Ohio App.3d 9, 2010-Ohio-1758, 930 N.E.2d 862, ¶ 7 (8th Dist.); *Church v. Morgan*, 115 Ohio App.3d 477, 481, 685 N.E.2d 809 (4th Dist.1996). Hence, we review the judgment independently and without deference to the determination of the probate court.

**{¶14}** " 'In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.' " *Polen v. Baker*, 92 Ohio St.3d 563, 565, 752 N.E.2d 258 (2001), quoting *Oliver v. Bank One, Dayton, N.A.*, 60 Ohio St.3d 32, 34, 573 N.E.2d 55 (1991). This intent must be ascertained from the language used in the will. *Id.* at 34, citing *Carr v. Stradley*, 52 Ohio St.2d 220, 371 N.E.2d 540 (1977), paragraph one of the syllabus. The words used in the will, " 'if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear[s] from the context that they were used by the testator in some secondary sense.' " *Ohio Natl. Bank v. Adair*, 54 Ohio St.2d 26, 30, 374 N.E.2d 415 (1978), quoting *Townsend's Exrs. v. Townsend*, 25 Ohio St. 477 (1874), paragraph three of the syllabus. All the parts of the will must be construed together, and effect, if possible, given to every word contained in the will. *Id.* at paragraph four of the syllabus.

**{¶15}** The court may consider extrinsic evidence to determine the testator's intent only when the language used in the will creates doubt as to its meaning. *Oliver*

at 34, 573 N.E.2d 55. But while extrinsic evidence may be considered where the language of the will is ambiguous, where the language of the will is clear and unambiguous, the testator's intent must be ascertained from the express terms of the will itself. *Boulger v. Evans*, 54 Ohio St.2d 371, 378-379, 377 N.E.2d 753 (1978).

**{¶16}** Extrinsic evidence may also be considered to resolve a latent ambiguity in a will, *i.e.,* an ambiguity that is not apparent from the language used in the will but arises because "some extrinsic fact or evidence creates the necessity for interpretation or a choice between two or more possible meanings, or if the words apply equally well to two or more different subjects or things." (Emphasis deleted.) *Radzisewski v. Szymanczak*, 8th Dist. No. 97795, 2012-Ohio-2639, ¶ 18. "Where there is a latent ambiguity appearing in a will, extrinsic evidence is admissible, not for the purpose of showing the testator's intention, but to assist the court to better interpret that intention from the language used in the will." (Emphasis deleted.) *Id.* at ¶ 19.

**{¶17}** Thus, " '[w]here a term in a will is susceptible to various meanings, the [court] may consider the circumstances surrounding the drafting of the instrument, in order to arrive at a construction consistent with the overall intent of the testator so as to uphold all parts of the will.' " *Sandy v. Mouhot*, 1 Ohio St.3d 143, 145, 438 N.E.2d 117 (1982), quoting *Wills v. Union Savings & Trust*, 69 Ohio St.2d 382, 433 N.E.2d 152 (1982), paragraph two of the syllabus.

[W]here there is some doubt as to the meaning of the will the court may admit extrinsic evidence of the testator's family situation, his business

and financial circumstances, the nature and extent of his investments, the character and manner of operation of his business and the natural objects of his bounty. With such evidence the court is better able to see things as the testator saw them and to construe the words used in the will as he understood them and to give that construction which he intended.

*Holmes v. Hrobon*, 158 Ohio St. 508, 518, 110 N.E.2d 574 (1953).

**{¶18}** A court, however, cannot rewrite a will. *Boulger*, *supra*, at 379, 377 N.E.2d 753; *Barr v. Jackson*, 5th Dist. No. 08 CAF 09 0056, 2009-Ohio-5135, ¶ 45. "A court has no power to make a new and different will for a testator in contravention of the language employed in the will." *Kurtz v. Kurtz*, 12th Dist. No. CA90-09-017, 1991 WL 84027, *3 (May 20, 1991), citing *Cleveland Trust Co. v. Frost*, 166 Ohio St. 329, 142 N.E.2d 507 (1957); see also *Weygandt v. Ward*, 9th Dist. No. 09CA0050, 2010-Ohio-2015, ¶ 10 (" 'If the terms and expressions employed by a testator forbid interpretation by reason of their clarity, a court is without power to change them.' "), quoting *Everhard v. Brown*, 75 Ohio App. 451, 461, 62 N.E.2d 901 (9th Dist.1945).

## Analysis

**{¶19}** Appellant advances a single assignment of error:

The trial court erred in its decision to award the farm to Charles Bogar but the farm equipment and machinery to the residual beneficiaries.

**{¶20}** The probate court based its decision in this case on the conclusion that this specific bequest to Appellant is ambiguous. While the phrase "the real estate

located at 13300 Diagonal Road, Salem, Ohio together with all contents of said real estate" is not ambiguous on its face, it does appear that an examination of all of the property located at 13300 Diagonal Road on the date of Thomas's death creates a latent ambiguity.

{¶21} "Contents" are defined as "something that is contained." www.dictionary.com  Appellant argues that the definition of "contents" is broader than the term "personal property."  While that is certainly correct, Appellant's interpretation of the language in the bequest is strictly "geographical" in nature:  all of the items physically located within the boundaries of testator's real estate were bequeathed to Appellant.  However, a strict application of this interpretation of "contents" would actually limit the bequest based on the location of the property on the day of Thomas's death.  In other words, if any of the usual contents of the real estate, regardless of their practical use or value to the real estate, were at a repair shop or loaned to a third party, that property would not be included in the bequest and would appear to pass to the residual beneficiaries due to happenstance, rather than the intent of the testator.

{¶22} The probate court's interpretation of the words "contents of said real estate," however, does not appear to address the intent of the testator.  The court relies, instead, on whether the specific item has "increased value," whether the item is capable of being titled in accordance with state law, and on whether these items "are typically found in a home environment."  Relying on his own definition, the court determined that automobiles and trucks found on the property were not "contents of

said real estate" and also that pieces of farm equipment, presumably because they had significant value and were not "typically" found in a "home" were also not "contents of said real estate," despite the fact that the real estate in question has been operated as a farm.

{¶23} While the probate court attempted to rely on and extrapolate from the *McAlpin* and *Ball* cases, this reliance is equally misplaced. In these cases, the property in dispute consisted of certificates of deposit, checks, promissory notes and bank passbooks. While these articles were undisputably physically located on or in the real property bequeathed, these articles were merely "representative" of the goods sought by the parties: money. Such articles have been described as "intangible personal property." The parties sought to obtain, not the paper certificates of deposit, but control of the funds the certificates represented. It cannot be disputed that these funds, like the funds represented by the checks, promissory notes and passbooks, were not physically located at or on the bequeathed premises and hence, did not fall under the definition of "contents." *McAlpin* and *Ball* have no application to the determination of the word "contents" here, because the property in dispute, farm equipment, trucks and other vehicles (tangible personal property), bear no resemblance to the money (intangible personal property) being sought in those cases.

{¶24} Despite our analytical disagreement with the probate court, we recognize, and Appellant appears to concede, that automobiles, while they may be garaged at or parked on the real estate, may not necessarily be "contents" of that real

estate by their very nature. While they are certainly personal property, it does strain the ordinary definition of "contents" to reach as far as automobiles. However, the question here is whether the testator intended these to be "contents of said real estate." There appears to be no evidence in the record on this question, beyond the admission that they were owned by the testator at the time of his death.

{¶25} On the other hand, trucks and farm equipment present a more difficult question. Appellant contends that trucks and farm equipment fall within the practical definition of "contents of said real estate," because the real estate at issue in this case is a farm. However, neither party offered any evidence to establish whether the real estate is an operating farm, or whether the trucks and farm equipment are necessary to the function or maintenance of the real property. Evidence of this nature would certainly be pertinent to determining the intent of the testator in this regard. While we agree that trucks and farm equipment may fall within the practical interpretation of the phrase "all contents of said real estate," particularly if the real estate is or was at decedent's death a functioning farm, there is insufficient evidence in the record to conclude that the probate court erred in excluding them from the specific bequest. We again note, however, that the court's reliance on the determination that these items of tangible personal property have a high value and are not usually found in a "home environment" does not meet the standard necessary to determine the testator's intent, here.

{¶26} Unlike a typical civil case, where the burden of proof is assigned to a specific party, and his or her failure to meet the burden of proof results in judgment

against that party, the lack of evidence in this case requires remand. The probate court is solely responsible for interpreting the will in accordance with the testator's intent. In this case, the question is whether vehicles and farm equipment are "contents of" the testator's real estate. Because the focus in this matter appears to have been on the intrinsic value of this disputed property, and because of the misplaced reliance on inapplicable law instead of on the intent of this testator, the matter must be remanded to the probate court for a new evidentiary hearing.

<u>Conclusion</u>

**{¶27}** For the foregoing reasons, we find that the specific bequest to Appellant contains a latent ambiguity. We reverse the judgment entry of the probate court and remand this matter for the probate court to consider extrinsic evidence regarding the practical use of the trucks and farm equipment identified in the appraisal, whether the testator intended the automobiles to be "contents of said real estate" and any additional evidence that may reveal the intent of the testator.

Donofrio, J., concurs.

Robb, P.J., concurs.