[Cite as *In re Estate of Carter*, 2025-Ohio-1073.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of the Estate of: | : | |
| Richard A. Carter, | : | |
| [Juanita F. Carter, | : | No. 24AP-518 |
| Appellant, | : | (Prob. No. 621253) |
| v. | : | (REGULAR CALENDAR) |
| Teresa Carter, | : | |
| Appellee]. | : | |

D E C I S I O N

Rendered on March 27, 2025

**On brief:** *Fred J. Milligan*, for appellant. **Argued:** *Fred J. Mulligan.*

**On brief:** *Kidwell & Cunningham, Ltd., Cynthia A. Cunningham, Korey M. Kidwell*, and *Jeremy R. Abrams*, for appellee. **Argued:** *Jeremy R. Abrams.*

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

JAMISON, P.J.

{¶ 1} Appellant, Juanita F. Carter, appeals a judgment of the Franklin County Court of Common Pleas, Probate Division, that sustained the exception that appellee, Teresa Carter, filed to the final account. For the following reasons, we affirm that judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} Richard A. Carter died on November 12, 2022. Juanita, Richard's wife, filed an application to admit Richard's will to probate on December 12, 2022. The will appointed Juanita executor of Richard's estate. Additionally, the will provided in relevant part:

> Second.  I bequeath my 1946 Ford to my son Anthony J. Carter, if living.
>
> Third.  I bequeath to my daughter Teresa A. Carter a motor vehicle belonging to me at the time of my death of her choice other the [sic] one bequeathed in paragraph two and the one used by my wife.

(Last Will & Testament of Richard A. Carter at 1.)

{¶ 3}  The probate court admitted Richard's will to probate.  Consistent with the terms of the will, the court appointed Juanita executor of Richard's estate.

{¶ 4}  On January 20, 2023, Juanita filed an inventory of Richard's assets with the probate court.  The inventory listed two motor vehicles: (1) a 1946 Ford two-door coupe, and (2) a 1970 Chevrolet truck.  The court scheduled a hearing regarding the inventory for February 16, 2023, and directed Juanita to notify the beneficiaries of Richard's will of the hearing.  Teresa did not receive notice of the hearing.

{¶ 5}  On January 30, 2023, Juanita filed an application with the probate court to transfer the 1970 Chevrolet truck to herself pursuant to the terms of Richard's will.  The probate court granted Juanita's application.  Additionally, on February 16, 2023, the probate court approved the inventory filed January 20, 2023.

{¶ 6}  On October 2, 2023, Juanita filed a final account.  The account showed that the 1970 Chevrolet truck was "distributed to Juanita F. Carter under Will."  (Oct. 2, 2023 Receipts & Disbursements at 1.)  The probate court scheduled a hearing on the final account and directed Juanita to notify the beneficiaries of the hearing.  Again, Teresa did not receive notice of the hearing.  Nevertheless, Teresa discovered the contents of the final account, and she filed an exception to it on November 16, 2023.

{¶ 7}  In her exception to the final account, Teresa stated that she had informed Juanita's attorney on January 23, 2023 that she had chosen the 1970 Chevrolet truck as the motor vehicle she wished to inherit under her father's will.  Teresa also explained that Juanita had transferred to herself two other motor vehicles that Richard had owned at the time of his death pursuant to R.C. 2106.18, which permits the conveyance of vehicles to a surviving spouse outside of probate.  Teresa argued that the probate court should transfer the 1970 Chevrolet truck to her under the terms of Richard's will.  In response, Juanita

asserted that the court should overrule the exception because she was using the 1970 Chevrolet truck, so she was entitled to the truck pursuant to Richard's will.

{¶ 8} The probate court scheduled a hearing before a magistrate regarding Teresa's exception to the final account. Teresa and Juanita testified at the hearing, along with Teresa's brother, Anthony, and Teresa's partner, Brad Smith.

{¶ 9} In a decision issued May 17, 2024, the magistrate sustained Teresa's exception. The magistrate concluded that "the ordinary meaning of the term 'use,' as mentioned in the decedent's will and as referred to day to day by ordinary individuals, refers to a vehicle that, upon the decedent's death, Juanita Carter was relying on and utilizing as a primary means of transportation to ensure that she had the ability to travel when need be." (Mag.'s Decision at 11.) Based on the evidence submitted during the hearing, the magistrate found that Juanita was not using the 1970 Chevrolet truck as contemplated by Richard's will. Consequently, Teresa could choose that vehicle as her inheritance under her father's will.

{¶ 10} Juanita objected to the magistrate's decision, and Teresa responded to those objections. In a judgment dated August 7, 2024, the probate court overruled Juanita's objections and adopted the magistrate's decision.

## II. ASSIGNMENT OF ERROR

{¶ 11} Juanita now appeals the August 7, 2024 judgment and assigns the following error:

> THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO MAGISTRATE'S DECISION SUSTAINING APPELLEE'S EXCEPTION TO APPELLANT'S FINAL ACCOUNT, FINDING THE DECEASED'S 1970 CHEVEROLET WAS NOT A MOTOR VEHICLE "USED BY MY WIFE" UNDER PARAGRAPH THIRD OF THE WILL AND AWARDING THE VEHICLE TO APPELLEE. THE DECISION WAS CONTRARY TO LAW, INCLUDING THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

## III. STANDARD OF REVIEW

{¶ 12} This appeal presents us with two questions: the interpretation of the terms of Richard's will and the application of those terms to the facts. Interpretation of the language in a will is a question of law, which an appellate court reviews de novo. *Bogar v. Baker*,

2017-Ohio-7766, ¶ 13 (7th Dist.); *Demeraski v. Bailey*, 2015-Ohio-2162, ¶ 11 (8th Dist.); *Barr v. Jackson*, 2009-Ohio-5135, ¶ 33 (5th Dist.). An appellate court reviews a probate court's factual findings to determine whether they are against the manifest weight of the evidence. *Bank One Trust Co., N.A. v. Scherer*, 2012-Ohio-5302, ¶ 10 (10th Dist.). Under the manifest-weight standard, an appellate court will not reverse a probate court judgment supported by competent, credible evidence. *In re Estate of Andolsek*, 2025-Ohio-511, ¶ 8 (11th Dist.); *In re Estate of Perry*, 2008-Ohio-351, ¶ 15 (12th Dist.).

## IV. LEGAL ANALYSIS

{¶ 13} By her sole assignment of error, Juanita argues that the probate court erred in interpreting Richard's will and concluding that the 1970 Chevrolet truck was not "the one [motor vehicle] used by my wife." (Last Will & Testament of Richard A. Carter at 1.) We disagree.

{¶ 14} When construing a will, the sole purpose of a court is to ascertain and carry out the intention of the testator. *Polen v. Baker*, 92 Ohio St.3d 563, 565 (2001). A court must determine the testator's intent from the words contained in the will. *Id.* A court presumes that the words in the will are "used in their ordinary sense." *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 279 (1989). " 'All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.' " *Id.*, quoting *Townsend's Exrs. v. Townsend*, 25 Ohio St. 477 (1874), paragraph four of the syllabus.

{¶ 15} In this case, the language at issue is the sentence, "I bequeath to my daughter Teresa A. Carter a motor vehicle belonging to me at the time of my death of her choice other the (sic) one bequeathed in paragraph two and the one used by my wife." (Last Will & Testament of Richard A. Carter at 1.) Specifically, we must determine the meaning of the phrase "the one used by my wife." *Id.* By looking to the language earlier in the same sentence, we know that "the one" is a shorthand reference to a "motor vehicle belonging to me at the time of my death." *Id.* So, in drafting his will, Richard excluded from Teresa's choice of motor vehicle "the one [motor vehicle] belonging to me at the time of my death . . . used by my wife." *Id.*

{¶ 16} We turn to dictionaries to ascertain the ordinary meaning of "used." Generally, "use" is primarily defined as a synonym to utilization or employment. Merriam-

Webster Dictionary Online, https://www.merriam-webster.com/dictionary/use (accessed Mar. 25, 2025) ("1 : to put into action or service : to avail oneself of : EMPLOY"); Cambridge Dictionary Online, https://dictionary.cambridge.org/us/dictionary/english/use (accessed Mar. 25, 2025) ("to put something such as a tool, skill, or building to a particular purpose"). "Use" also includes the concept of repeated utilization or employment. Oxford English Dictionary Online, https://www.oed.com/dictionary/use_v?tab=meaning_and_use#160 14744 (accessed Mar. 25, 2025) ("II. To put to practical or effective use; to make use of, employ, esp. habitually."). Consequently, the phrase "the one used by my wife" refers to the one motor vehicle Richard owned at the time of his death that Juanita utilized or employed, especially habitually. (Last Will & Testament of Richard A. Carter at 1.)

{¶ 17} Juanita next argues that the probate court erred in deciding that the evidence established that the 1970 Chevrolet truck did not qualify as "the one [motor vehicle] used by my wife." *Id.* We are not persuaded.

{¶ 18} "A will 'speaks from the time of execution as to its meaning and from the death of testator as to its effect and operation.'" *Cent. Trust Co.*, *N.A. v. Smith*, 50 Ohio St.3d 133, 137, fn. 2 (1990), quoting 4 Bowe-Parker, *Page on Wills*, § 30.26, at 165 (3d Ed. 1961). In *In re Estate of Evans*, 165 Ohio St. 27 (1956), the Supreme Court of Ohio applied the rule that the testator's date of death is the operative date as to a will's effect and operation. There, the testator bequeathed "all cash in the box on the desk in the back room of my home" to the beneficiary. *Id.* at paragraph two of the syllabus. At the time of the testator's death, the box only contained $7.50. The Supreme Court applied the terms of the will to the facts existing at the time of the testator's death and determined that the beneficiary's inheritance was $7.50—the amount of cash in the box on the date of the testator's death. *Id.*

{¶ 19} In determining the effect and operation of Richard's will, we look to the state of affairs on the date of Richard's death—November 12, 2022. Thus, we must examine the evidence to ascertain what one motor vehicle Juanita was using at that time.

{¶ 20} On the date of Richard's death, he owned five vehicles: (1) a 2017 GMC Sierra, (2) a 2006 Chevrolet Trailblazer, (3) a 2001 Ford F-150 Lightning, (4) a 1946 Ford two-door coupe, and (5) a 1970 Chevrolet truck. The 2001 Ford F-150 Lightning was damaged beyond repair in the accident that resulted in Richard's death. Juanita transferred the 2017

GMC Sierra and the 2006 Chevrolet Trailblazer to herself outside of probate pursuant to R.C. 2106.18.

{¶ 21} Teresa, Anthony, and Teresa's partner, Brad Smith, all testified that, at the time of Richard's death, Juanita was no longer driving. At the December 2023 hearing, both Teresa and Smith testified that they last saw Juanita drive nine to ten years previously. Anthony testified that his mother had stopped driving "quite a while" before the death of his father. (Tr. Vol. II at 108.) Juanita, however, claimed she did drive at the time of Richard's death. She testified that when she drove during the five years prior to the December 2023 hearing, she drove the 2017 GMC Sierra.

{¶ 22} Teresa testified that, prior to Richard's death, when Juanita needed to go anywhere, Richard would drive her, most frequently in the 2017 GMC Sierra. Smith concurred that he normally saw Richard drive Juanita in the 2017 GMC Sierra. He also sometimes saw Richard driving Juanita in the 2001 Ford F-150 Lightning. Juanita testified that Richard drove her around in "all of [the vehicles], at different times." (Tr. Vol. I at 46.)

{¶ 23} Richard had acquired historical license plates for the 1970 Chevrolet truck, which limited its use. *See* R.C. 4503.181(A) (stating a historical motor vehicle "is owned solely . . . for participation in club activities, exhibitions, tours, parades, and similar uses. A historical motor vehicle shall not be used for general transportation, but may be operated on the public roads and highways to and from a location where maintenance is performed on the vehicle"). Teresa stated that Richard drove the 1970 Chevrolet truck to car shows and cruise-ins so he could display the truck. Teresa attended car shows and cruise-ins with her father, but Juanita did not enjoy them, so she generally did not go. Juanita, however, did go with Richard to a 2022 car show in the 1970 Chevrolet truck.

{¶ 24} Based on this evidence, the probate court found "the one [motor vehicle] used by my wife" was the 2017 GMC Sierra. (Last Will & Testament of Richard A. Carter at 1.) We agree. At the time of Richard's death, the one motor vehicle Juanita regularly used was the 2017 GMC Sierra, regardless of whether she was a driver or passenger. Juanita testified that the 2017 GMC Sierra was the vehicle she drove in 2022 when Richard died. Both Teresa and Smith identified the 2017 GMC Sierra as the vehicle Richard most often drove when transporting Juanita. While Juanita appears to have occasionally ridden in the 1970 Chevrolet truck in the months prior to Richard's death, we cannot single that vehicle out as

"the one [motor vehicle] used by my wife." (Last Will & Testament of Richard A. Carter at 1.) Rather, Richard typically used the 1970 Chevrolet truck to indulge his hobby of attending car shows and cruise-ins.

{¶ 25} Juanita argues that the probate court wrongly interpreted the evidence in finding the 1970 Chevrolet truck was not "the one [motor vehicle] used by my wife." (Last Will & Testament of Richard A. Carter at 1.) In making this argument, Juanita relies on evidence of her use of the 1970 Chevrolet truck *after* Richard's death. That evidence is irrelevant. As we stated above, the date of Richard's death is the operative date as to his will's effect and operation. *See Smith*, 50 Ohio St.3d at fn. 2.

{¶ 26} As the probate court determined, the 1970 Chevrolet truck was an option for Teresa to choose under Richard's will because that vehicle was not "the one [motor vehicle] used by" Juanita. (Last Will & Testament of Richard A. Carter at 1.) Accordingly, we conclude that the probate court did not err in sustaining Teresa's exception to the final account, and we overrule Juanita's sole assignment of error.

## V. CONCLUSION

{¶ 27} For the foregoing reasons, we overrule the sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

MENTEL and EDELSTEIN, JJ., concur.

_____